UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ST PAUL FIRE AND MARINE INSURANCE COMPANY and NEW YORK MARINE AND GENERAL INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>KINSALE INSURANCE COMPANY,<br><br>Defendant,<br><br>TRC OPERATING COMPANY, INC. and TRC CYPRESS GROUP, LLC.,<br><br>Real Parties in Interest. | Case No. 1:20-cv-00967-CDB<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Docs. 82, 83)<br><br>ORDER DIRECTING PARTIES TO FILE JOINT REPORT<br><br>**21-DAY DEADLINE** |

Pending before the Court is the consolidated cross-motion for summary judgment by Plaintiffs New York Marine and General Insurance Company ("NY Marine") and St. Paul Fire and Marine Insurance Company ("St. Paul") (Doc. 83) and cross-motion for summary judgment by Defendant Kinsale Insurance Company ("Kinsale") (Doc. 82). The parties filed their respective oppositions on January 29, 2024 (Docs. 87-88) and replies on February 9, 2024 (Docs. 89-90). On February 23, 2024, following the parties' expression of consent to the jurisdiction of a United States magistrate judge, this case was reassigned to the Undersigned for all further proceedings, including trial and entry of judgment, pursuant to 28 U.S.C. § 636(c)(1). (Doc. 93).

I.      **Background**

This consolidated action is a dispute between three insurance companies over their coverage of legal defense costs of TRC Operating Company, Inc. and TRC Cypress Group, LLC

(collectively, "TRC"), the real parties in interest in this case. In 2014, TRC initiated a state court suit against Chevron USA, Inc. ("Chevron"), captioned *TRC Operating Co. v. Chevron, Kern County*, Case No. S-1500-CV-282520 DRL (the "Underlying Lawsuit") in which TRC seeks damages resulting from Chevron's alleged conduct and operations on its property. (Doc. 1 ¶6). The Underlying Lawsuit includes Chevron's crossclaims against TRC in which Chevron alleges that TRC's conduct on their property, including their use of cyclic steaming methods to harvest and extract oil, caused physical injury to Chevron's property. *Id*. ¶7.[1]

St. Paul issued commercial general liability ("CGL") policies to TRC for the period from July 1, 2000, through March 17, 2013.[2] JSUMF ¶1. NY Marine also issued CGL policies to TRC for the period from March 17, 2014, to March 17, 2018. *Id*. ¶2. Kinsale issued a CGL policy to TRC for the period from March 17, 2013, to March 17, 2014. (Doc. 80-1 "the Kinsale Policy"). *Id*. ¶3.

TRC and Chevron own adjacent properties within the Midway-Sunset Oil Field located in the San Joaquin Valley, southwest of Bakersfield, California. TRC and Chevron both conduct oil extraction and harvesting operations on their respective properties. *Id*. ¶4. In July 2014, TRC initiated the Underlying Lawsuit, seeking damages arising from Chevron's operations on its property. In January 2017, TRC filed a first amended complaint in the Underlying Lawsuit. *Id*. ¶6. On May 18, 2017, Chevron filed a cross-complaint against TRC in the Underlying Lawsuit, which included causes of action for negligence, trespass, nuisance, and declaratory relief. (Doc. 80-3 pp. 2-10, the "Cross-Complaint."). St. Paul and NY Marine have each shared in TRC's defense of the Cross-Complaint from its inception in 2017. JSUMF ¶8. On November 15, 2017, TRC's insurance broker submitted a notice of claim to Kinsale on behalf of TRC. The notice of

---

[1] Cyclic steaming has been described as a process where "steam is injected down a well, and the well is shut-in. The steam remains in the reservoir, transferring its thermal energy to the oil and the reservoir rock, reducing the oil's viscosity and allowing the oil to flow more freely toward the wellbore." *Shell Petroleum, Inc. v. U.S.*, 996 F. Supp. 361, 370 n.5 (D. Del. 1997).

[2] The parties largely agree on the facts of this case and have submitted a Joint Stipulation of Undisputed Material Facts in Support of Dispositive Motions. (Doc. 80 or "JSUMF"). Plaintiffs separately filed their own, separate statement of undisputed material facts in support of partial summary judgment (Doc. 83-2), which Kinsale does not dispute for purposes of the partial summary judgment motions. (Doc. 87-1).

claim included an attached copy of the Cross-Complaint. *Id*. ¶9. Kinsale acknowledged receipt of TRC's referenced claim on November 17, 2017, and on January 22, 2018, Kinsale informed TRC that it was denying coverage for the Cross-Complaint. *Id*. ¶11; *see* (Doc. 80-4).

On September 20, 2021, after trial in the Underlying Lawsuit, a jury returned a verdict awarding TRC $73,039,19 in damages and rejecting Chevron's crossclaims. *Id*. ¶12. On October 26, 2021, judgment was entered in favor of TRC in the Underlying Lawsuit. *Id*. ¶13. On that same date, the court in the Underlying Lawsuit granted Chevron's motion for a new trial but denied its motion for judgment notwithstanding the verdict. The parties filed cross-appeals of the court's order in the Underlying Lawsuit, which remain pending. *Id*. ¶13.

On July 10, 2020, St. Paul initiated this action with the filing of a complaint against Kinsale. (Doc. 1). The complaint asserts that Kinsale has a duty to share with St. Paul and NY Marine in the defense of TRC until the Underlying Lawsuit has concluded. *Id*. The St. Paul complaint does not assert any claims relating to any duty to indemnify TRC. On August 5, 2020, NY Marine also filed a complaint against Kinsale in this Court similarly asserting that Kinsale has a duty to defend TRC in the Underlying Lawsuit. The NY Marine complaint also seeks adjudication as to whether Kinsale owes a duty to indemnify TRC if Chevron prevails on its Cross-Complaint. This portion of NY Marine's complaint currently is stayed pending the conclusion of the Underlying Lawsuit. (Doc. 65 p. 6).

On February 2, 2021, the Court consolidated the separate actions commenced by St. Paul and NY Marine against Kinsale. (Doc. 12). The consolidated action was stayed until March 10, 2023, when the Court granted Plaintiffs motion to lift the stay "for the limited purpose of permitting the parties to conduct discovery relating to and file dispositive motions on the discrete questions of whether and the extent to which Kinsale owes a duty to defend the TRC Entities in the Underlying Matter." (Doc. 65).

**II.     Standard of Law**

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine

3

only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Each party's position must be supported by: (1) citing to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. *See* Fed. R. Civ. P. 56(c)(1). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (on summary judgment, "the court has discretion in appropriate circumstances to consider other materials, [but] it need not do so"). Furthermore, "[a]t summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." *Nevada Dep't of Corr v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citations and internal quotations omitted). The focus is on the admissibility of the evidence's contents rather than its form. *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson,* 477 U.S. at 252). However, the non-moving party is not

4

1   required to establish a material issue of fact conclusively in its favor; it is sufficient that "the
2   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
3   versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d
4   626, 630 (9th Cir. 1987).

5       The court must apply standards consistent with Rule 56 to determine whether the moving
6   party has demonstrated the absence of any genuine issue of material fact and that judgment is
7   appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).
8   "[A] court ruling on a motion for summary judgment may not engage in credibility
9   determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir.
10  2017) (citation omitted). The evidence must be viewed "in the light most favorable to the
11  nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party.
12  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198
13  F.3d 1130, 1134 (9th Cir. 2000).

14      In addition, when the parties submit cross-motions for summary judgment, as they have
15  done here, each motion must be considered on its own merits. *Fair Hous. Council of Riverside*
16  *Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). Accordingly, the Court will
17  address each party's grounds for summary judgment and decide whether the facts conclusively
18  establish liability or the lack thereof for each party.

19  **III.   Discussion**

20      **A. Duty to Defend – Governing Law**

21      "An insurer has a very broad duty to defend its insured under California law." *Anthem*
22  *Electronics Inc. v. Pac. Employers Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). "The
23  California Supreme Court has stated that 'the insured is entitled to a defense if the underlying
24  complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the
25  complaint might be amended to give rise to a liability that would be covered under the policy.'"
26  *Id*. (quoting *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal.4th 287, 299 (1993) (emphasis in
27  original)). In California, "once the insured has established potential liability by reference to the
28  factual allegations of the complaint, the terms of the policy, and any extrinsic evidence upon

5

1 which the insured intends to rely, the insurer must assume its duty to defend unless and until it
2 can conclusively refute that potential." *Montrose*, 6 Cal.4th at 299.  "Any doubt as to whether the
3 facts establish the existence of the defense duty must be resolved in the insured's favor." *Id*. at
4 299-300.

5 "The determination whether the insurer owes a duty to defend is usually made in the first
6 instance by comparing the allegations of the complaint with the terms of the policy." *Anthem*
7 *Electronics*, 302 F.3d at 1054 (citing *Montrose*, 6 Cal.4th at 295).  Facts extrinsic to the complaint
8 may trigger a duty to defend when they show that it is possible that the claim may be covered by
9 the policy. *Id.*  The insurer must conduct a reasonable investigation into the circumstances of the
10 claim before denying coverage. *Id*. at 1054-55 (citing *Am. Int'l Bank v. Fidelity and Deposit Co.*,
11 49 Cal. App.4th 1558, 1571 (1996)).

12 Under California law, an insurer's duty to defend is not synonymous with its duty to
13 indemnify its insured. *Certain Underwriters at Lloyd's of London v. Super. Ct.*, 24 Cal.4th, 945,
14 958 (2001).  The duty to defend is broader than the duty to indemnify: the defense duty attaches
15 when a policy is ambiguous and the insured would "reasonably expect the insurer to defend him
16 or her against the suit based on the nature and kind of risk covered by the policy, or when the
17 underlying suit potentially seeks damages within the coverage of the policy." *Wesco Ins. Co. v.*
18 *Brad Ingram Construction*, No. 22-16584, 2024 WL 243344, at *2 (9th Cir. 2024) (quoting
19 *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal.4th 857, 869 (1998)).

20 "To prevail in an action seeking declaratory relief on the question of the duty to defend,
21 the insured must prove the existence of a *potential for coverage*, while the insurer must establish
22 *the absence of any such potential*.  In other words, the insured need only show that the underlying
23 claim *may* fall within policy coverage; the insurer must prove that it *cannot."* *Delgado v.*
24 *Interinsurance Exch. of Auto. Club of S. Cal.*, 47 Cal.4th 302, 308 (2009) (internal citations and
25 quotations omitted) (emphasis in original).  Interpretation of insurance policy language is a
26 question of law that may be properly decided in a motion for summary judgment. *Nat'l Fire Ins.*
27 *Co. v. Martinelli*, No. 07-CV-01056-AWI-GSA, 2008 WL 2725070, at *5 (E.D. Cal. July 11,
28 2008) (citing *MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635, 641 (2003)).

**B. Duty to Defend – Discussion**

The key issue presented by the parties' cross-motions for summary judgment is whether Kinsale has a duty to defend TRC in the Underlying Lawsuit. The parties agree that Kinsale's duty to defend operates only if (1) the allegations of Chevron's Cross-Complaint implicate injury flowing from conduct that constitutes an "occurrence" as defined under the Kinsale Policy, and (2) no operable exclusion under the Kinsale Policy precludes coverage.

**1. Whether Chevron's Claims Against TRC Involve an Occurrence under the Kinsale Policy**

The Kinsale Policy provides coverage for property damage caused by an "occurrence," which is defined to mean "an accident, including continuous or repeated exposure to substantially the same harmful conditions." *See* Kinsale Policy p. 14 n.13. While the Kinsale Policy does not define the term "accident," under California law, the word "accident" in the coverage clause of a liability policy refers to the conduct of the insured for which liability is sought to be imposed. *Delgado*, 47 Cal.4th at 311 (citing *Quan v. Truck Ins. Exch.*, 67 Cal. App.4th 583, 596 (1998); *Collin v. Am. Empire Ins. Co.*, 21 Cal. App.4th 787, 816 (1994)).

An injury-producing event is not an "accident" when all the acts, the manner in which they were undertaken, and the objective accomplished occurred as intended by the insured. *Delgado*, 47 Cal.4th at 312. "An accident … is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." *Merced Mut. Ins. Co. v. Mendez*, 213 Cal. App.3d 41, 50 (1989). Accordingly, "where the insured intended all of the acts that resulted in the victim's injury, the event may not be deemed an 'accident' merely because the insured did not intend to cause injury." *Id.*; *Commercial Union Ins. Co. v. Super. Ct.*, 196 Cal. App.3d 1205, 1208 (1987) (holding that the trial court "erroneously applied the term 'accident' to the consequences of the act rather than to the happening of the act itself.").

However, coverage is not always precluded by a policy "when the insured's intentional acts result in injury or damage." *Albert v. Mid-Century Ins. Co.*, 236 Cal. App.4th 1281, 1291 (2015). "An accident may exist 'when any aspect in the causal series of events leading to the

7

injury or damage was unintended by the insured and a matter of fortuity.'" *Id*. (quoting *Mendez*, 213 Cal. App.3d at 50).

The court in *Mendez* highlights this distinction through the following example:

> When a driver intentionally speeds and, as a result, negligently hits another car, the speeding would be an intentional act. However, the act directly responsible for the injury – hitting the other car – was not intended by the driver and was fortuitous. Accordingly, the occurrence resulting in injury would be deemed an accident. On the other hand, where the driver was speeding and deliberately hit the other car, the act directly responsible for the injury – hitting the other car – would be intentional and any resulting injury would be directly caused by the driver's intentional act.

*Mendez*, 213 Cal. App.3d at 50.

Plaintiffs advance various arguments in support of their contention that the conduct by TRC alleged in the Cross-Complaint constitutes "an accident," thereby satisfying the Kinsale Policy's definition of "occurrence" to trigger coverage and Kinsale's duty to defend.

First, Plaintiffs point to the fact that the Cross-Complaint asserts a negligence cause of action. (Doc. 83 p. 17). The Cross-Complaint's claim for negligence alleges that:

> TRC has failed to exercise due care, negligently conducted oil operations, and failed to follow prudent oil field practices as a reasonably careful oil and gas operator would have done when conducting cyclic steaming operations on the TRC Property. Among other things, TRC's negligent conduct has caused steam, oil, gas, and formation fluids to migrate onto and physically invade the subsurface and surface of the Chevron Property, interfere with and reduce the volume of oil that can be produced from Chevron's Property, contribute to the instability of the Embankment an Embankment condition … which has damaged Chevron and the Chevron Property.

Cross-Complaint ¶16.

But arguments relying on a distinction between an intentional and a negligent tort "misconstrue the 'accident' requirement in standard general liability policies. 'Under California law, the term refers to the nature of the insured's conduct, not his state of mind.'" *Quan*, 67 Cal. App.4th at 596 (quoting *Collin*, 21 Cal. App.4th at 804) (emphasis omitted). In other words, "[t]he scope of the duty does not depend on the labels given to the causes of action in the third-party complaint; instead it rests on whether the alleged facts or known extrinsic facts reveal a possibility that the claim may be covered by the policy." *Cunningham v. Universal Underwriters*,

8

1    98 Cal. App.4th 1141, 1148 (2002).  "Since pleadings are easily amended, the proper focus is on
2    the facts alleged, rather than the theories for recovery." *Quan*, 67 Cal. App.4th at 592 (quotations
3    and citation omitted).  *Accord Swain v. Cal. Cas. Ins. Co.*, 99 Cal. App.4th 1, 8 (2002) ("A
4    general boilerplate pleading of 'negligence' adds nothing to a complaint otherwise devoid of facts
5    giving rise to a potential for covered liability.").

6    　　　Second, Plaintiffs argue that "if the damage that is a consequence of an intentional act is
7    unexpected and unintended, the damage was caused by accident and, therefore, within the Kinsale
8    Policy's definition of 'occurrence.'"  (Doc. 83 p. 19) (citing *Meyer v. Pac. Emps. Ins. Co.*, 233
9    Cal. App.2d 321, 325-28 (1965)).  But, as set forth above, whether an insured intended or
10   expected its conduct to cause a harm is immaterial to whether the conduct is accidental – courts
11   look primarily to the nature of the insured's conduct.  *Quan*, 67 Cal. App.4th at 596; *accord Fire*
12   *Ins. Exch. v. Super. Ct.*, 181 Cal. App.4th 388, 395 (2010) (in California, "the term 'accident'
13   refers to the nature of the conduct itself rather than to its consequences.").  In other words,
14   Chevron's injury alone cannot be considered the necessary "unexpected, independent, and
15   unforeseen happening" that may bring an otherwise intentional act within the ambit of an
16   "accident"; rather, *the cause* of Chevron's injury must be the unforeseen happening.  *See*
17   *Scheffler v. Allstate Ins. Co.*, 196 F. Supp.2d 1003, 1006 (C.D. Cal. 2002) (citing *Mendez*, 213
18   Cal. App.3d at 50).

19   　　　Plaintiffs' reliance on *Meyer v. Pac. Emps. Ins. Co.* for a seemingly inconsistent holding
20   (Doc. 83 p. 19) is inapt.  To be sure, the *Meyer* court held that "[t]he fact that an act which causes
21   an injury is intentional does not take the consequence of that act outside the coverage of a policy
22   which excludes damage unless caused by accident for if the consequence that is the damage or
23   injury is not intentional and is unexpected it is accidental in character."  233 Cal. App.2d at 327.
24   However, as other courts have found, because the issue before the *Meyer* court was the
25   interpretation of a policy's intentional acts exclusion, not a scope of coverage clause (as here), the
26   decision has little persuasiveness in this context.  *See Allstate Ins. Co. v. Salahutdin*, 815 F. Supp.
27   1309, 1312-13 (N.D. Cal. 1992); *accord Gonzalez v. Allstate Ins. Co.*, No. 00–0350–1EG(AJB),
28   2000 WL 1375569, at *6 n.8 (S.D. Cal. Sept. 13, 2000) ("Insofar as the present case involves the

scope of the primary coverage clause itself, rather than a subsidiary exclusionary clause, these cases [including *Meyer*] are readily distinguishable) (citing *Salahutdin*, 815 F. Supp. at 1312-13).

Finally, Plaintiffs argue that the Cross-Complaint's allegations of negligence by TRC in its undertaking of cyclic steam operations implicate accidental conduct that constitutes an "occurrence" under the Kinsale Policy. Plaintiffs specifically refer to allegations that TRC's cyclic steaming on its own property caused fluids "to migrate onto and *come through the subsurface and to the surface of the Chevron Property*." (Doc. 83 p. 17) (citing JSUMF ¶13) (emphasis added). Here, Plaintiffs have identified an allegation within the Cross-Complaint that implicates "an additional, unexpected, independent and unforeseen happening" that may have caused Chevron's injuries, thereby establishing accidental conduct constituting an occurrence under the Kinsale Policy.

In *Reshamwalla v. State Farm Fire and Cas. Co.*, 112 F. Supp.2d 1010 (E.D. Cal. 2000), another judge of this Court was confronted with the same question presented here – whether alleged conduct was "an accident" constituting an occurrence under the relevant insurance policy such that the insurer owed a duty to defend. There, the insured threw concrete chunks onto a freeway that injured a driver. *Id*. at 1019. In the underlying lawsuit, the injured driver alleged both that the insured intentionally and negligently threw the concrete onto the road. The Court found that the allegations of the complaint were broad enough that they would encompass accidental conduct that constituted an occurrence triggering coverage under the insured's policy. In particular, the Court found the allegations plausibly implicated a scenario where the insured intentionally threw debris at a wall, but that the debris ricocheted into traffic and caused the plaintiff's injury. *Id*. The court held that "[s]ince the underlying complaint 'presented the potentiality of a judgment based upon non-intentional conduct, and since liability for such conduct would fall within the indemnification coverage, the duty to defend became manifest at the outset.'" *Id*. (quoting *Gray*, 65 Cal.2d at 276–77).

In *Barks v. CastlePoint Nat. Ins. Co*., No. SACV 13-00954 DOC (Ex), 2014 WL 1286224 (C.D. Cal. Mar. 26, 2014), the plaintiff contracted with a construction company to build a house that was required under the governing homeowners rules and regulations to be no taller than 24

feet. The contractor built a house approximately 26 feet tall, prompting plaintiff to commence a negligence suit against the builder for plaintiff's resulting injuries and a separate suit against the builder's insurer demanding coverage. While acknowledging that the intended buildout of a 24-foot house and resulting production of a 26-foot house was caused by "intentional actions," the court held that "the steps taken to create the faulty product did not go as intended or originally planned." *Id*. at *6. The court reasoned that if it "construes [the builder's] actions as not intending to create a house over 24 feet tall but failing, they arguably could constitute an 'occurrence' that would trigger a duty to defend and possibly indemnify." *Id.* at *5.

The reasoning adopted by the courts in *Reshamwalla* and *Barks* applies here. While it appears undisputed that TRC intentionally engaged in cyclic steaming operations for the express purpose of dislodging oil and raising it to the surface, Chevron alleges in the Cross-Complaint that the oil migrated and surfaced indirectly and/or directly on *Chevron's* property – not into TRC's wellbores or otherwise on TRC's property. And it is conceivable and within the Cross-Complaint's allegations of negligence that some unexpected and independent happening – such as TRC's deficient operation of the cyclic steaming equipment, or an undiscovered obstruction (similar to the wall against which debris could have ricocheted in *Reshamwalla*) diverting subsurface oil from its intended surface point into TRC's wellbores or onto TRC's property – caused the dislodged oil to migrate onto and/or surface on Chevron's property. *Cf. Atl. Cas. Ins. Co. v. Crum*, 364 F. Supp.3d 1123, 1134 (E.D. Cal. 2019) (finding alleged conduct was not accidental where "there is no evidence before the court on summary judgment of any unexpected or unintended event transpiring between the intentional drilling of the Arroya well and the subsequent damage claimed by Parreira").

Kinsale argues that the Court should "focus" on the undisputed intentional act that precipitated Chevron's alleged harm – TRC's engagement in cyclic steaming – and rule that such conduct does not constitute an "accident" potentially covered under the Kinsale Policy because "TRC knew the results of its oil extraction process and intentionally engaged in this process." (Doc. 84 p. 6); *see* (Doc. 82 p. 16) ("TRC used cyclic steaming to obtain crude oil from its property and was aware that the materials used in this process can and would surface or migrate

11

1   due to the nature of the extraction process."). Kinsale relies on *Aquarius Well Drilling, Inc. v.*
2   *Am. States Ins. Co.*, No. 2:12-cv-00971-MCE-CMK, 2012 WL 6048993 (E.D. Cal. Dec. 5, 2012).
3   In that case, plaintiffs sued a well drilling company for damages they sustained as a result of the
4   company's testing and reporting of the condition of a well on their property. *Id.* at *1.  The well
5   drilling company sued its insurer for the insurer's failure to defend the company in the underlying
6   suit.  The court held that the insurer had no duty to defend because the well testing – although
7   allegedly conducted negligently – was intentional and, thus, not an "accident" satisfying the
8   policy's definition of a coverable "occurrence." *Id.* at *7.

9          The key difference between *Aquarius* and the instant case is that, in *Aquarius*, there was
10  no pleading by the plaintiff and no finding by the court of a possible "independent" and
11  "unforeseen happening" between the company's well testing and its reporting of the test results.
12  *See Mendez*, 213 Cal. App.3d at 50.  In short, it appears the well drilling company's alleged
13  negligence was that its test results were wrong – in other words, that it gave bad professional
14  advice or opinion, not that an unforeseen happening affected the testing.  Here, in contrast, the
15  allegations in Chevron's Cross-Complaint charge TRC with engaging in affirmative, negligent
16  conduct in connection with its cyclic steaming operations.  As set forth above, the negligence
17  allegations encompass scenarios implicating independent and unforeseen happenings causing
18  fluids to migrate onto and come through the subsurface and to the surface of Chevron's property.

19         Having concluded that the Cross-Complaint's allegations of TRC's negligent conduct of
20  cyclic steaming operations constitute an "occurrence" under the Kinsale Policy, the Court need
21  not separately determine whether other actions alleged in the Cross-Complaint – such as TRC's
22  excavation project and installation of a gabion wall – satisfy the definition of an accidental act.
23  That is because where at least some claims potentially are covered notwithstanding other claims
24  may fall outside coverage, the insurer has a duty to defend the action in its entirety.  *Buss v.*
25  *Superior Court*, 16 Cal.4th 35, 47-48 (1997).

26         Accordingly, because Kinsale cannot establish the absence of any potential for coverage –
27  "i.e., that the underlying complaint 'can by no conceivable theory raise a single issue which could
28  bring it within the policy coverage'" – summary judgment properly is granted to Plaintiffs and

against Kinsale as to Kinsale's duty to defend TRC in the Underlying Lawsuit. *See Cunningham*, 98 Cal. App.4th at 1147 (quoting *Montrose*, 6 Cal.4th at 300).

### 2. Whether the Exclusions in the Kinsale Policy are Applicable

Even if the events giving rise to the claims asserted in Chevron's Cross-Complaint implicate an occurrence under the Kinsale Policy, Kinsale alternatively argues that the Absolute Pollution Exclusion and Subsidence Exclusion preclude coverage for TRC's claims. "An insurer may rely on an exclusion to deny coverage only if it provides *conclusive evidence* demonstrating that the exclusion applies." *Atl. Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App.4th 1017, 1038-39 (2002) (emphasis in original). Furthermore, exceptions to the performance of basic underlying contract obligations must be clearly stated to inform the insured of the effect of those exceptions. *Gray*, 65 Cal.2d at 269. "Whereas coverage clauses are interpreted broadly to afford the greatest possible protection to the insured, exclusionary clauses are construed narrowly against the insurer." *Cont'l Cas. Co. v. City of Richmond*, 763 F.3d 1076, 1079 (9th Cir. 1985). Thus, "[a]ny doubt as to whether the facts give rise to a duty to defend is resolved in favor of the insured." *Legarra v. Federated Mut. Ins. Co.*, 35 Cal. App.4th 1472, 1479 (1995). However, "[c]ourts may not rewrite the insurance contract or force a conclusion to exact liability where none was contemplated." *Id*. at 1480. An insurer may select the risks it will insure and those it will not, and a clear exclusion will be respected. *Howell v. State Farm Fire & Cas. Co.*, 218 Cal. App.3d 1146, 1467 (1990).

Preliminarily, the Court assesses that, to the extent the Cross-Complaint alleges that TRC's negligent operations caused the formation of surface expressions on the Chevron property, California regulations and caselaw appear to treat surface expressions as the type of event commonly thought of as pollution. The Court also preliminarily assesses that the Absolute Pollution Exclusion likely precludes coverage of Chevron's claims to the extent they allege TRC negligently caused surface expressions to form and migrate onto the Chevron property.

However, the Court need not dispositively decide whether and the extent to which the Absolute Pollution Exclusion applies to bar (or require) coverage. That is because, having found that Kinsale owes a duty to defend TRC in the Underlying Lawsuit, the Court need only find that

at least some claims potentially are covered notwithstanding other claims may fall outside coverage. *Buss*, 16 Cal.4th at 47-48.

As discussed above, the Cross-Complaint alleges that TRC's cyclic steaming operations on its property "caused steam and reservoir fluids to migrate onto and come through the subsurface and to the surface of the Chevron Property." Cross-Complaint ⁋ 22. This distinction between damages to the subsurface and surface of the Chevron property is significant as TRC's alleged conduct and Chevron's resulting injury may implicate the "Amended Limits of Insurance Underground Resources Equipment Hazard" endorsement (the "Underground Resources Coverage Endorsement") of the Kinsale Policy, which provides in relevant part:

> The following provisions are added with respect to "property damage" included within the "underground resources and equipment hazard" arising out of the operations performed by you or on your behalf and described in this endorsement:
>
> A. With respect to "property damage" included within the "underground resources and equipment hazard" the following is added to **Section III -LIMITS OF INSURANCE**:
>
> 8. Subject to **5**. Above, the Underground Resources and Equipment Property Damage Aggregate Limit shown in the Schedule above is the most we will pay under Coverage A for the sum of damages because of all "property damage" included within the "underground resources and equipment hazard" and arising out of operations in connection with any one well.
>
> B. Exclusion **j. (4)** under Paragraph **2., Exclusions of Section I – COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is replaced by the following:
>
> 2. Exclusions
>
> This insurance does not apply to:
>
> j. **Damage To Property**
>
> "Property damage" to:
>
> (4) Personal property in the care, custody or control of the insured
>
> This exclusion does not apply to any "property damage" included within the "underground resources and equipment hazard" other than "property damage" to that particular part of any real property on which operations are being performed by you or on your behalf if the "property damage" arises out of those operations and your sole negligence.

14

…

**D.** The following is added to the **Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition of SECTION IV- COMMERCIAL GENERAL LIABILITY CONDITIONS:**

Upon the "occurrence" of a blow-out or cratering of any oil, gas or water well resulting from or in connection with operations performed by you or on your behalf, you agree that you will at your own cost and expense, promptly and diligently take whatever steps are necessary or legally required of you or necessary for you or any other person to bring such well under control.

If you delay or fail to comply with this agreement, we will not be liable for any "property damage" included within the "underground resources or equipment hazard" resulting from the blow-out or cratering of any such well.

**E.** The following definitions are added to **SECTION V- DEFINITIONS:**

1. "Co-owner of the working interest" means any person or organization who is, with you, a co-owner, joint venturer or mining partner in mineral properties who:

a. Participates in the operating expense of such properties; or

b. Has the right to participate in the control, development or operation of such properties.

2. "Underground resources and equipment hazard" includes "property damage" to any of the following:

a. Oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;

b. Any well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on;

c. Any casing, pipe, bit, tool, pump or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well or hole or beneath the surface of any body of water.

Kinsale Policy pp. 32-33.

Plaintiffs note this endorsement was specifically added to the Kinsale Policy to provide coverage for "'property damage' included within the 'underground resources and equipment hazard' arising out of the operations performed by you [the insured] or on your behalf and described in this endorsement." (Doc. 89 p. 3) (citing JSUMF, Doc. 80-1 pp. 032-033). Plaintiffs argue that the Underground Resources Coverage Endorsement is applicable since the Cross-

15

1  Complaint contains claims that "TRC's negligent conduct has caused steam, oil, gas, and
2  formation fluids to migrate onto and physically invade the *subsurface* and surface of the Chevron
3  Property" which interferes with the volume of oil that Chevron could produce from its property.
4  (Doc. 83 p. 23); Cross-Complaint ¶16 (emphasis added).

5  Under California law, to the extent the language of an endorsement and in the body of the
6  policy arguably conflict, the endorsement prevails so long as it is conspicuous, plain and clear.
7  *Haynes v. Farmers Ins. Exch.*, 32 Cal.4th 1198, 1204 (2004); *Estate of Murphy v. Gulf Ins. Co.*,
8  82 Cal. App.3d 304, 309 (1978). *Accord Price v. Zim Israel Navigation Co., Ltd.*, 616 F.2d 422,
9  427 (9th Cir. 1980) ("[T]he paramount principle of insurance policy construction is that a policy
10 should be interpreted to give effect to the intention of the parties .... In ascertaining that intention,
11 an endorsement normally prevails over inconsistent provisions of the policy.") (citations omitted).

12 Kinsale does not challenge the validity of the Underground Resources Coverage
13 Endorsement or argue that any exclusion within the Kinsale Policy trumps the endorsement's
14 operation; nor does Kinsale seriously dispute the possible applicability of the endorsement to
15 claims for underground property damage. Instead, Kinsale argues solely that the Underground
16 Resources Coverage Endorsement is inapplicable because it requires that an "occurrence" take
17 place for coverage to be available. *See* (Doc. 87 p. 9; Doc. 90 pp. 6-7).

18 The Court has found Chevron's allegations that TRC negligently conducted cyclic
19 steaming operations on the TRC property constitute an occurrence within the meaning of the
20 Kinsale Policy. Further, although certain types of damages claimed, like formation of surface
21 expressions on the Chevron property, may be subject to the Absolute Pollution Exclusion in the
22 Kinsale Policy, Chevron's alleged damages to its underground resources do not appear to fall
23 within any exclusion and, instead, fall squarely within coverage expressly provided for under the
24 Underground Resources Coverage Endorsement.[3]

---

[3] The Court agrees with Plaintiffs that Kinsale has not carried its burden of proving "through conclusive evidence" that any applicable exclusion upon which Kinsale relies to deny coverage and avoid its duty to defend TRC in the underlying lawsuit "applies in all possible worlds" as to Chevron's claims of underground property damage. (Doc. 83 p. 17, citing *J. Lamb*, 100 Cal. App.4th at 1038-39).

Thus, the Cross-Complaint presents at least some covered claims, and Kinsale has a duty to defend this "mixed" action in its entirety. *Buss*, 16 Cal.4th at 61.

## IV. Conclusion and Order

For the reasons set forth above, it is HEREBY ORDERED:

Plaintiffs joint motion for partial summary judgment (Doc. 83) is GRANTED;

Kinsale's motion for summary judgment (Doc. 82) is DENIED; and

It is FURTHER ORDERED, within 21 days of entry of this order, the parties shall meet/confer and file a joint report setting forth their respective positions regarding further scheduling of the case and any other matters requiring Court involvement.

IT IS SO ORDERED.

Dated: **June 10, 2024**

UNITED STATES MAGISTRATE JUDGE