UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ST PAUL FIRE AND MARINE INSURANCE COMPANY and NEW YORK MARINE AND GENERAL INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>KINSALE INSURANCE COMPANY,<br><br>Defendant,<br><br>TRC OPERATING COMPANY, INC. and TRC CYPRESS GROUP, LLC.,<br><br>Real Parties in Interest. | Case No. 1:20-cv-00967-CDB<br><br>ORDER HOLDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR EQUITABLE CONTRIBUTION ALLOCATION IN ABEYANCE<br><br>(Docs. 103, 104)<br><br>ORDER DIRECTING PARTIES TO SUBMIT SUPPLEMENTAL BRIEFING<br><br>ORDER CONTINUING PRE-TRIAL CONFERENCE AND TRIAL DATES<br><br>(Doc. 96)<br><br>**21-DAY DEADLINE** |

Pending before the Court is the motion for summary judgment by Plaintiffs New York Marine and General Insurance Company ("NY Marine") and St. Paul Fire and Marine Insurance Company ("St. Paul") (Doc. 103) and the motion for equitable contribution allocation by Defendant Kinsale Insurance Company ("Kinsale") (Doc. 104).

**I.    Background**

This consolidated action is a dispute between three insurance companies over their coverage of legal defense costs of TRC Operating Company, Inc. and TRC Cypress Group, LLC (collectively, "TRC"), the real parties in interest in this case. In 2014, TRC initiated a state court suit against Chevron USA, Inc. ("Chevron"), captioned *TRC Operating Co. v. Chevron, Kern County*, Case No. S-1500-CV-282520 DRL (the "Underlying Lawsuit") in which TRC seeks

damages resulting from Chevron's alleged conduct and operations on its property. (Doc. 1 ¶ 6). The Underlying Lawsuit includes Chevron's crossclaims against TRC in which Chevron alleges that TRC's conduct on their property, including their use of cyclic steaming methods to harvest and extract oil, caused physical injury to Chevron's property. *Id*. ¶ 7.

On July 10, 2020, St. Paul initiated this action with the filing of a complaint against Kinsale. (Doc. 1). The complaint asserts that Kinsale has a duty to share with St. Paul and NY Marine in the defense of TRC until the Underlying Lawsuit has concluded. *Id*. The St. Paul complaint does not assert any claims relating to any duty to indemnify TRC. On August 5, 2020, NY Marine also filed a complaint against Kinsale in this Court similarly asserting that Kinsale has a duty to defend TRC in the Underlying Lawsuit. The NY Marine complaint also seeks adjudication as to whether Kinsale owes a duty to indemnify TRC if Chevron prevails on its cross-complaint. This portion of NY Marine's complaint currently is stayed pending the conclusion of the Underlying Lawsuit. (Doc. 65 at 6).

On February 2, 2021, the Court consolidated the separate actions commenced by St. Paul and NY Marine against Kinsale. (Doc. 12). The consolidated action was stayed until March 10, 2023, when the Court granted Plaintiffs motion to lift the stay "for the limited purpose of permitting the parties to conduct discovery relating to and file dispositive motions on the discrete questions of whether and the extent to which Kinsale owes a duty to defend the TRC Entities in the Underlying Matter." (Doc. 65 at 7).

NY Marine and St. Paul filed a joint motion for partial summary judgment on January 8, 2024. (Doc. 83). Kinsale filed a motion for summary judgment that same day. (Doc. 82). The parties filed oppositions on January 29, 2024 (Docs. 87, 88), and replies on February 9, 2024 (Docs. 89, 90). On June 10, 2024, the Court granted NY Marine and St. Paul's motion and denied Kinsale's motion, finding that the cross-complaint presented at least some claims covered by the Kinsale Policy and, thus, Kinsale has a duty to defend the action in its entirety. *See* (Doc. 94).

On April 18, 2025, Plaintiffs filed their motion for summary judgment, arguing Kinsale must pay an equal one-third share of the defense fees and costs incurred in the Underlying Lawsuit, from tender and going forward. (Doc. 103). Plaintiffs attached thereto a separate statement of facts

in support. (Doc. 103-2). On the same day, Kinsale filed its motion for equitable contribution allocation, requesting the Court to impose a "time-on-the-risk" method of allocation. (Doc. 104). Kinsale did not attach a separate statement of facts to its motion. However, in its opposition to Plaintiff's motion filed May 9, 2025, it included a response to Plaintiffs' separate statement, stating each fact as undisputed. (Doc. 106-1). Plaintiffs filed their opposition to Kinsale's motion that same day. (Doc. 105).

The parties' motions came for hearing before the undersigned on June 2, 2025. Garrett Owens appeared on behalf of St. Paul and Lawrence Allen Tabb appeared on behalf of NY Marine. Alexander M. Baggio appeared on behalf of Kinsale. (Doc. 108).

## II.     Standard of Law

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

Each party's position must be supported by: (1) citing to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. *See* Fed. R. Civ. P. 56(c)(1). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (on summary judgment, "the court has discretion in appropriate circumstances to consider other materials, [but] it need not do so"). Furthermore, "[a]t summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." *Nevada Dep't of Corr v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citations and internal quotations omitted). The focus is on the admissibility of the evidence's contents rather

3

than its form. *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323). The non-moving party must "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson,* 477 U.S. at 252). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated the absence of any genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

In addition, when the parties submit cross-motions for summary judgment, as they have done here, each motion must be considered on its own merits. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

///

### III. Discussion

As the Court has determined that Kinsale has a duty to defend, the pending motions concern the remaining question of the proper method to be used to allocate fees and costs related to said defense.

**A. Allocating Costs Between Coinsurers – Governing Law**

"The right to equitable contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has either paid more than its share of the claim in question or defended the action without participation from the other carrier or carriers obligated to do so. Equitable contribution permits reimbursement to the carrier paying in excess of its proportionate share of the obligation in question, and serves the equitable objective of equalizing the common burden shared by coinsurers and preventing one insurer from profiting at the expense of others." *Am. States Ins. Co. v. Ins. Co. of the State of Pennsylvania*, No. 2:12-cv-01489-MCE-AC, 2017 WL 2257138, at *5 (E.D. Cal. May 23, 2017) (citing *Scottsdale Ins. Co. v. Century Surety Co.*, 182 Cal. App. 4th 1023, 1031 (2010)).

"California law does not impose any fixed method for allocating defense costs between insurers. Instead, any determination in that regard is subject to the court's sound discretion in achieving just apportionment … There is consequently no 'correct' or even preferred method of allocating defense costs between coinsurers." *Id.*

Additionally, under California law, "reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other … Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not controlled by the language of their contracts with the respective policy holders." *USF Ins. Co. v. Clarendon Am. Ins. Co.*, 452 F. Supp. 2d 972, 999–1000 (C.D. Cal. 2006) (quoting *Signal Companies v. Harbor Ins. Co.*, 27 Cal.3d at 359, 369 (1980)). "[E]quity overrides the terms of the insurance policies." *Id.* (quoting *Commerce & Industry Ins. Co. v. Chubb Custom Ins. Co.*, 75 Cal.App.4th 739, 749 (1999)).

"The court may consider numerous factors in making its determination, including the nature

of the underlying claim, the relationship of the insured to the various insurers, the particulars of each policy, and any other equitable considerations." *Residence Mut. Ins. Co. v. Travelers Indem. Co. of Connecticut*, 26 F. Supp. 3d 965, 978 (C.D. Cal. 2014).

### B. Relevant Factors

Here, the parties fail to include in their briefing important factors relevant to the Court's allocation determination. As such, there are not sufficient facts before the Court to conduct a proper equitable analysis. *See, e.g., Employers Ins. Co. of Wausau v. Pac. Employers Ins. Co.*, No. B204712, 2009 WL 1363475, at *10 (Cal. App. May 18, 2009) (reversing trial court's pro-rata-by-time-on-the risk allocation because more fact-finding was required before an equitable method of apportionment could be selected) (unpublished).

First, the parties provide no clear details or chronology of the events that are the subject of the Underlying Lawsuit (and Chevron's crossclaims). The parties represent in their motions that they stipulated to use of the joint statement of undisputed facts that accompanied the earlier motions for summary judgment (Doc. 80) in connection with their present motions. (Doc. 103-1 at 4 n.5; Doc. 104 at 7 n.1). Among numerous other documents, the parties attached Kinsale's response to NY Marine's interrogatories to said statement. (Doc. 80-13). Therein, Kinsale refers to a "June 21, 2011 sinkhole incident and related Orders and repairs." (Doc. 80-13 at 6). However, the Court can locate no further elaboration as to this incident in the record.

Additionally, during the hearing on the motions, counsel for Kinsale mentioned "well 20" beginning production in 2007. The complaint and cross-complaint filed in state court include no further details regarding these events or any specifics regarding any other events at issue. *See* (Doc. 80-2, 80-3). As such, the parties have failed to provide sufficient information regarding the nature of the underlying claim, such as applicable triggering events, or any other details regarding the facts that are the subject of the Underlying Lawsuit.

Second, the parties provide no clear information regarding when and for how long the policies at issue were implicated. Plaintiffs state that St. Paul issued policies to TRC from July 1, 2000, to March 17, 2013, then Kinsale issued a policy to TRC from March 17, 2013, to March 17, 2014, and then NY Marine issued policies to TRC from March 17, 2014, to March 17, 2018. (Doc.

105 at 7-8; Doc. 80 at 3, ¶ 1). St. Paul and NY Marine's motion and opposition each include a footnote stating St. Paul believes only its policies from February 15, 2011, to March 17, 2013, potentially provide coverage for the Underlying Lawsuit, and any prior policies are not relevant. (Doc. 103-1 at 5 n.6; Doc. 105 at 8 n.5; *id.* at 12 n.7). St. Paul provides no facts, arguments, or reasoning to support its contention that only its policies from said period should apply.

Kinsale's representations regarding periods of insurance are in line with those in Plaintiffs' motion. *See* (Doc. 104 at 7). However, Kinsale later provides that "St. Paul Fire provided insurance coverage for six years from 2007 to 2013 … Plaintiffs have ten years of time 'on the risk'—and received ten years of premiums—while Kinsale only has one." (Doc. 104 at 9). Kinsale provides no explanation as to its calculation of Plaintiffs receiving ten years of premiums. It is unclear why Kinsale begins its counting in 2007 for St. Paul. Though counsel for Kinsale mentioned a "well 20" becoming operational in 2007 during the hearing, as noted above, the Court has no further details regarding this event and its significance, if any, to the Underlying Lawsuit. Similarly, it is unclear why St. Paul begins its counting in 2011. Further, Kinsale represents that a fourth insurer, Lexington Insurance Company, "provided insurance to TRC for 3 years from 1996 to 1999." *Id.* at 9 n.2. Plaintiffs contest the relevance of any such policies and include a footnote stating that Kinsale "was required to establish as much … through more than a mere footnote with no evidence …" (Doc. 105 at 7 n.4). Thus, it is unclear to the Court what the relevant periods of coverage are concerning the insurance for the Underlying Lawsuit.

Third, the parties provide no clear information regarding the amount of applicable premiums paid to each insurer, such as billing records. The Court has no information before it to compare the amount of premiums paid to each respective party for the time in which the applicable policies were implicated in the Underlying Lawsuit.

Fourth, during the hearing on the motions, the parties represented that Plaintiffs' and Defendant's policies had the same applicable policy limits. Nonetheless, the Court will direct the parties to provide further information regarding potential differences, if any, regarding the particulars of the policy limits at issue.

Lastly, as the undersigned observed during the motion hearing, one factor (if not a key

factor) to consider in seeing that "equity" prevails in the Court's decision (*Commerce & Industry Ins. Co.*, 75 Cal.App.4th at 749) is the timing and duration of TRC's misconduct alleged in or implicated by Chevron's crossclaims. It is this misconduct that implicates the parties' duty to defend, and, thus, is material to the Court's assessment of the equities of allocating defense costs. Yet, Chevron's crossclaims do not refer to the relevant time period and the parties have not proffered information (for instance, discovery materials exchanged or trial evidence presented in the Underlying Lawsuit) sufficient for the Court to assess this factor.

Accordingly, the Court will order the parties to submit supplemental briefing regarding the above factors, including a joint statement for those facts not in dispute and separate statements for those facts which are disputed.

Additionally, to allow for said submissions, the Court will continue the pre-trial conference and trial dates.

**IV.     Conclusion and Order**

For the reasons set forth above, it is HEREBY ORDERED that:

1. Plaintiffs' motion summary judgment (Doc. 103) and Defendant's motion for equitable contribution allocation (Doc. 104) are held in abeyance.

2. Within 21 days of issuance of this order, the parties shall file a joint statement for those facts not in dispute and separate statements for those facts which are disputed concerning:

    a. The specific details and chronology of the events that are the subject of the Underlying Lawsuit;

    b. When and for what length of time each of the relevant policies were implicated by said events, including any specific dates and the significance, if any, of "well 20" and the "June 21, 2011 sinkhole incident";

    c. The amount of applicable premiums paid to each insurer over the length of time the policies were implicated;

    d. Relevant differences, if any, in the applicable maximum policy limits;

    e. The significance the policies of Lexington Insurance Company have, if any,

8

concerning the Underlying Lawsuit;

  f. The timing, duration, and scope of TRC's misconduct alleged in or implicated by Chevron's crossclaims; and

  g. Any other factors of relevance in an equitable analysis.

3. The operative scheduling order (Docs. 96, 102) is amended as follows:

  a. Pre-trial conference: September 22, 2025

  b. Trial: December 9, 2025

**All other provisions of the operative scheduling order (Doc. 96) not in conflict with this order remain in effect.**

IT IS SO ORDERED.

Dated: **July 9, 2025**

UNITED STATES MAGISTRATE JUDGE

9